COMMONWEALTH of Pennsylvania,
Appellee,

v.

Anyis Ali MCNEIL, Appellant.

Superior Court of Pennsylvania.

Argued June 27, 2002.
Filed Oct. 4, 2002.

Before DEL SOLE, P.J., FORD
ELLIOTT, JOYCE, STEVENS,
MUSMANNO, ORIE MELVIN, LALLY–
GREEN, KLEIN, and BENDER, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, Anyis Ali McNeil, appeals
from the order entered by the Court of
Common Pleas of Lehigh County on Octo-
ber 2, 2001, denying Appellant's Motion for
Disclosure of the Audio Portion of Video-
tape (Motion) on the basis that the trial
court lacked jurisdiction of the matter.
We reverse, remand and relinquish juris-
diction.

¶ 2 The relevant facts are as follows.
Appellant is charged with criminal homi-
cide arising from an incident occurring

outside AJ's Bar in Allentown, Pennsylvania on March 3, 2000. Appellant's Motion for Disclosure, 7/19/01 at 1, and Criminal Information, 5/7/00 at 1. On the evening of the homicide, the owner of AJ's Bar videotaped the interior of the bar. Appellant's Motion for Disclosure, 7/19/01, at 1. The videotape included both video and audio recordings. *Id.* The owner of AJ's Bar turned over to the Commonwealth both the audio and video recordings of the videotape. *Id.*

¶3 During discovery, the Commonwealth provided defense counsel with the video portion of the videotape. *Id.* The Commonwealth declined to provide the audio portion of the videotape absent a court order ordering such disclosure. N.T., 7/13/01, at 4–5. The Commonwealth refused to disclose the audio portions of the recordings in an attempt to protect itself from the potential for civil and criminal liability under Section 5725 of the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa.C.S.A. § 5725. This section addresses civil actions for unlawful interception, disclosure or use of wire, electronic or oral communication and provides for a defense for court-ordered disclosure. *Id.*

¶4 On July 19, 2001, Appellant filed a Motion with the trial court seeking disclosure. The Commonwealth joined the Motion, indicating it had no objection to providing the audio portion of the videotape if pursuant to an order.

¶5 On July 31, 2001, the trial court held a hearing and denied the Motion due to lack of jurisdiction. The trial court stated the following in its order denying the Motion:

NOW, this 31st day of July, 2001, upon consideration of the Motion for Disclosure of Audio Portion of Videotape, filed by defendant July 20, 2001; and upon consideration of the Rule to Show Cause filed by the undersigned on the same date; after oral argument held this date; and for the reasons articulated simultaneously on the record; it appearing that the undersigned does not have jurisdiction to enter within the requested order [1];

[1] In his motion defendant seeks an Order directing the Commonwealth to permit defense counsel to hear the audio portion of a videotape taken by the owner of A.J.'s Bar inside the bar on the evening on which the criminal homicide which is the subject of this prosecution occurred. The homicide occurred outside the bar. However, the defendant contends that the movement and conversation of various individuals inside the bar may be relevant to their defense.

Previously, by agreement, the Commonwealth supplied the visual portion of the videotape to defense counsel. At that time the Commonwealth disclosed that the tape also contained an audio portion. The Commonwealth did not turn over the audio portion of the tape because of its concerns that to do so would violate the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. Sections 5701–5781. Section 5703(2) of the Act provides that anyone who intentionally discloses the contents of any wire, electronic or oral communication obtained through interception is guilty of a felony of the third degree. Sections 5725 and 5726 provide civil penalties including removal from office.

The parties agree that it would violate the Wiretap Act for the Commonwealth to turn over the requested audio portion of the tape to defendant without a court Order. The parties also agree that if a court Order is

obtained upon which the Commonwealth acted in good faith, that there would be no violation of the Wiretap Act. See Sections 5725(c) and 5726(b). The Commonwealth also agrees that if a court Order issues authorizing it to turn over the audio portion, it will do so and will not interpose any discovery, relevancy, privilege, or other objections to the disclosure.

Upon reviewing the act, the undersigned concludes that this court does not have jurisdiction to authorize the disclosure. We conclude, rather, that exclusive jurisdiction for such authorization lies in the Superior Court of Pennsylvania. Section 5725(c) provides as follows: "It is a defense to an action brought pursuant to subsection (a) that the actor acted in good faith reliance on a *court* order or the provisions of this chapter." (Emphasis added.) Section 5726(b) contains a similar provision including the term "court order."

"Court" is defined in Section 5702 as follows:

> "The Superior Court. For the purposes of Subchapter C only, the term shall mean the court of common pleas." The sections containing the defense of acting in reliance on a court Order are contained in subchapter B of the Wiretap Act (18 Pa.C.S.A. Sections 5703–5728). Subchapter C is contained in Sections 5741–5748. Accordingly, we conclude that under the express provisions of the statute, only the Superior Court can authorize the dissemination.

*IT IS ORDERED* that the Motion for Disclosure of Audio Portion of Videotape is denied, without prejudice for defendant to seek the requested relief from the Superior Court of Pennsylvania or other appropriate court.

Trial Court Order, 7/31/01, at 1–3.

¶ 6 Appellant filed an Application for Ancillary Relief to this Court which we denied on October 29, 2001. Appellant also filed a Motion to Certify Interlocutory Order for Appeal with the trial court. On October 2, 2001, the trial court granted Appellant's Motion to Certify Interlocutory Order for Appeal. The interlocutory appeal is presently before us.

¶ 7 Appellant raises one issue on appeal:

I. Whether the Court of Common Pleas of Lehigh County had jurisdiction to grant the petition for the disclosure of the audio portion of the videotape or whether such jurisdiction is exclusively in the Superior Court?

Appellant's Brief at 5.

¶ 8 We review the question as to whether the disclosure request is a matter over which the Superior Court has jurisdiction under the Wiretap Act, or a discovery matter over which the Court of Common Pleas has jurisdiction. We conclude that since the request here is a discovery request, the Court of Common Pleas of Lehigh County has the jurisdiction to rule upon a disclosure request that has possible Wiretap Act implications.

¶ 9 First, we address the Wiretap Act, particularly the Commonwealth's concern about potential civil liability should it disclose the audio portion. 18 Pa.C.S.A. § 5725 provides:

**Civil action for unlawful interception, disclosure or use of wire, electronic or oral communication**

**(a) Cause of action.**—Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or pro-

cures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person:

(1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1000, whichever is higher.

(2) Punitive damages.

(3) A reasonable attorney's fee and other litigation costs reasonably incurred.

**(b) Waiver of sovereign immunity.**— To the extent that the Commonwealth and any of its officers, officials or employees would be shielded from liability under this section by the doctrine of sovereign immunity, such immunity is hereby waived for the purposes of this section.

**(c) Defense.**—It is a defense to an action brought pursuant to subsection (a) that the actor acted in good faith reliance on a court order or the provisions of this chapter.

18 Pa.C.S.A. § 5725. The Commonwealth asserts it will disclose "under a court order" to qualify for the defense found in 18 Pa.C.S.A. § 5725(c).[1]

█ ¶ 10 The § 5725(c) term "court order" includes an order of the Court of Common Pleas. In 1991, our Supreme Court held that the § 5725(c) term "court order" is not limited to Superior Court orders unsealing wiretap transcripts and embraces an order of the Court of Common Pleas. See, Boettger v. Loverro, 526 Pa. 510, 587 A.2d 712 (1991). In Boettger, a newspaper published an article containing quotes from transcripts of wiretapped conversations only after the written issu-

ance of a court order denying the defendant's suppression motion of those transcripts. The criminal defendant brought a civil action under the Wiretap Act against the newspaper. Our Supreme Court held that the newspaper was entitled to the § 5725(c) defense because it had exercised "good faith reliance on a court order." Id. at 720.

¶ 11 Our Supreme Court explained that the "court order" referred to in § 5725(c) was not limited to an order unsealing the transcript of the wiretap. Id. at 719–720. The Court recognized that the Wiretap Act contained no definition of "court order." Id. The Court then concluded that both the plain meaning of the language and the legislative history led to a conclusion that a "court order" included orders of the Courts of Common Pleas. Id. at 720. Thus, the court order denying the suppression motion in Boettger was a court order for the purpose of the § 5725(c) defense. Id.

¶ 12 In 1993, our Supreme Court emphasized that a "court order" was necessary to trigger the good faith defense under § 5725(c) in a civil action for disclosure of intercepted communications to taxing authorities. Boettger v. Miklich, 534 Pa. 581, 633 A.2d 1146 (1993) (suspected bookmaker brought an action for civil damages for violation of the Wiretap Act which allegedly occurred when a state trooper disclosed intercepted communications to agents of the Internal Revenue Service and Pennsylvania Department of Revenue without a court order).

¶ 13 And, in 1999, our sister court, the Commonwealth Court, likewise made clear that a "court order" is required to ensure that the state police have a good faith

1. We decline to address any substantive questions regarding the Wiretap Act, such as whether the requested disclosure constitutes an "oral communication" under the Wiretap Act.

defense under § 5725(c) in a civil action for disclosure of intercepted communications in an internal affairs investigation or a disciplinary hearing. *Dance v. Pennsylvania State Police*, 726 A.2d 4 (Pa.Cmwlth. 1999) (state police officer, suspended from work based on content of intercepted telephone calls he made to his estranged wife, brought an action against the police department alleging violations of the Wiretap Act). Thus, orders of Courts of Common Pleas involving disclosure of intercepted communications are "court orders" for purposes of the good faith defense of 18 Pa.C.S.A. § 5725(c).

¶ 14 Next, we address the issue before us. We conclude that since discovery requests in criminal matters are within the exclusive jurisdiction of the Courts of Common Pleas, the Court of Common Pleas of Lehigh County has the jurisdiction to rule upon a disclosure request that has possible Wiretap Act implications. Should the Court of Common Pleas order disclosure, that order is a "court order" for purposes of the defense under § 5725(c).

¶ 15 Both our Supreme Court and this Court have addressed the concept of jurisdiction. Our Supreme Court stated that jurisdiction is the legal right by which judges exercise their authority to decide cases. *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139, 144 n. 3 (1997). Jurisdiction can never attach and can never be acquired by consent or waiver of the parties. *Id.* Similarly, our own Court commented as follows:

> Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law. It is the right to adjudicate concerning the subject matter in a given case.... Without such jurisdiction, there is no authority to give judgment and one so entered is without force or effect. The trial court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved *sub judice.* Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case.

*Aronson v. Sprint Spectrum, L.P.*, 767 A.2d 564, 568 (Pa.Super.2001), *appeal denied*, 566 Pa. 632, 781 A.2d 137 (2001) (*citing Bernhard v. Bernhard*, 447 Pa.Super. 118, 668 A.2d 546, 548 (1995)) (internal citations and quotation marks omitted). As the following demonstrates, the Courts of Common Pleas have the jurisdiction under the Pennsylvania Constitution, the Judicial Code, and the Pennsylvania Rules of Criminal Procedure to decide discovery-related matters that may implicate the Wiretap Act.

¶ 16 The Pennsylvania Constitution provides the following with respect to the jurisdiction of the Courts of Common Pleas:

> There shall be one court of common pleas for each jurisdictional district ... having unlimited original jurisdiction in all cases except as may otherwise be provided by law.

Pa. Const. Art. V, § 5. Thus, the plain meaning [2] of Article V, Section 5 is that the Courts of Common Pleas have unlimited

---

2. No rules of statutory construction need be applied in this interpretation. The general principles governing the construction of statutes apply also to the interpretation of constitutions. *Perry County Telephone & Telegraph v. Public Service Commission*, 265 Pa. 274, 108 A. 659 (1919). Where an ambiguity exists, the constitution is entitled to a construction as nearly as may be in accordance with the intent of its makers. *Moers v. City of Reading*, 21 Pa. 188, 200 (1853). Here, we need not resort to the rules of construction since the plain meaning of the constitution is clear.

original jurisdiction in all cases except as may otherwise be provided by law.[3] *See, Gainer v. Jones,* 347 Pa.Super. 462, 500 A.2d 1148, 1149 (1985).

¶ 17 The Judicial Code, like the constitution, also confers unlimited original jurisdiction to the Courts of Common Pleas. The relevant statute is 42 Pa.C.S.A. § 931, which provides in pertinent part:

### § 931. Original jurisdiction and venue

■ **(a) General rule.**—Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, *the courts of common pleas shall have unlimited jurisdiction of all actions and proceedings,* including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

42 Pa.C.S.A. § 931 (emphasis added). While the legislature had the power under Article V to restrict the jurisdiction of the Courts of Common Pleas, it has exercised its power in only a few matters.[4] Thus, the General Assembly has preserved under section 931 the concept of "unlimited original jurisdiction" in the Courts of Common Pleas for all actions and proceedings. *See, Gainer,* 500 A.2d at 1149. Also, the Courts of Common Pleas clearly have the jurisdiction to hear murder cases. *Commonwealth v. Matlock,* 481 Pa. 521, 393 A.2d 26, 28 (1978).

■ ¶ 18 Incident to this jurisdiction is the authority of the Courts of Common Pleas to handle discovery matters. The trial court has the power to resolve questions involving discovery in a criminal case. *Commonwealth v. Miller,* 765 A.2d 1151,

1153 (Pa.Super.2001). *See also, Commonwealth v. Shelton,* 536 Pa. 559, 640 A.2d 892, 895 (1994).

¶ 19 Finally, the Pennsylvania Rules of Criminal Procedure address discovery in criminal matters. Pa.R.Crim.P. 573 provides for pretrial discovery and inspection in criminal cases as follows:

**(B) Disclosure by the Commonwealth**

*(1) Mandatory:*

In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items....

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

\* \* \*

**(E) Remedy**

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(B)(1)(g) and 573(E), 42 Pa.C.S.A.

---

**3.** The few exceptions, none of which are applicable to this case, are set forth at 42 Pa. C.S.A. §§ 723, 725, 742, 761, 762, 763 and 764.

**4.** See note 3, *supra.*

¶ 20 Rule 573(B)(1)(g), thus, mandates that the Commonwealth disclose the transcripts and recordings of any electronic surveillance, as well as the authority by which said transcripts and recordings were obtained. Further, the Court of Common Pleas under Rule 573(E) has the authority to order a party to permit discovery or inspection. Pa.R.Crim.P. 573(E).[5] The remedies provided in paragraph (E) "apply equally to the Commonwealth and the defendant as the interests of justice require." *See,* Comment to Rule 573.

¶ 21 Rule 573 trumps the Wiretap Act in one respect. Rule 573 gives the defendant 14 days of discovery after arraignment without the need to wait the 10–day period provided for under § 5720 of the Wiretap Act. 18 Pa.C.S.A. 5720. *See,* Pa.R.Crim.P. 1101(5) which states, in pertinent part:

> (5) Section 5720 of the Wiretapping and Electronic Surveillance Control Act, ... 18 Pa.C.S. § 5720, is suspended as inconsistent with Rule 573 only insofar as the section may delay disclosure to a defendant seeking discovery under Rule 573(B)(1)(g) ...

Also, the Comment to Rule 573 states, in pertinent part:

> The limited suspension of Section 5720 of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5720, see Rule 1101(E) [6], is intended to insure that the statutory provision and Rule 573(B)(1)(g) are read in harmony. A defendant may seek discovery under paragraph (B)(1)(g) pursuant to the time frame of the rule, while the disclosure provisions of Section 5720 would operate within the time frame set forth in Section 5720 as to materials specified in Section 5720 and not previously discovered.

*See,* Comment to Rule 573. Thus, the 10–day waiting period of § 5720 of the Wiretap Act is suspended as inconsistent with the 14–day discovery period of Rule 573.

¶ 22 Finally, we observe that each case considered by the Supreme Court, the Commonwealth Court and this Court, where rights have been asserted under the Wiretap Act, has involved an appeal from an order of the Court of Common Pleas. *See, Commonwealth v. Rekasie,* 566 Pa. 85, 778 A.2d 624 (2001); [7] *Agnew v. Dupler,* 553 Pa. 33, 717 A.2d 519 (1998); [8] *Com-*

---

5. *See also, Commonwealth v. Vernon,* 324 Pa.Super. 395, 471 A.2d 897, 900 (1984) (discussing orders available under precurser to Rule 573, former Rule 305E).

6. The proper citation is to Rule 1101(5).

7. The Supreme Court addressed suppression motions in the context of the Wiretap Act in *Commonwealth v. Rekasie,* 566 Pa. 85, 778 A.2d 624 (2001). There, a cooperative informant had consented to have his telephone conversation with Rekasie taped pursuant to an ongoing drug investigation. *Id.* at 625–626. Based on several interceptions, a search warrant was issued and cocaine was seized from Rekasie's luggage on a flight from Florida to Pittsburgh. *Id.* at 626. Both Rekasie, the drug courier, and Rizzo, the drug dealer, were charged with possession with intent to deliver a controlled substance and both filed motions to suppress on the basis of illegal interceptions. *Id.* The trial court granted the motions to suppress information disclosed in a telephone conversation recorded with the consent of one participant pursuant to Section 5704(2)(ii) of the Wiretap Act. *Id.* The Supreme Court ruled that the trial court erred in suppressing a number of the interceptions. *Id.* at 633.

8. In *Agnew v. Dupler,* 553 Pa. 33, 717 A.2d 519 (1998), a police officer brought an action against the police chief and Hellam Township for violation of the Wiretap Act. The suit arose from the police chief's alleged use of the intercom system in the officer's squadroom to monitor Agnew's conversations with another police officer. *Id.* at 521. The trial court entered a compulsory nonsuit, and the Commonwealth Court affirmed. *Id.* The Supreme Court affirmed and held that the police

*monwealth v. McIvor*, 448 Pa.Super. 98, 670 A.2d 697 (1996), *appeal denied*, 547 Pa. 753, 692 A.2d 564 (1997).[9] The procedure that was used in each of these cases was that the Court of Common Pleas decided the issue with Wiretap Act implications, whether in the context of a motion to suppress, *Rekasie*, a petition for *habeas corpus* relief, *McIvor*, or an action under the Wiretap Act in a civil case, *Agnew*. Then, each case proceeded through appropriate appellate review.

¶ 23 We emphasize that the proper role of the Superior Court is to review determinations of Courts of Common Pleas and, with regard to the Wiretap Act, among other things, to issue orders authorizing interception of wire, electronic or oral communications. *See, ·Commonwealth v. Iannelli*, 430 Pa.Super. 402, 634 A.2d 1120 (1993), *appeal denied*, 537 Pa. 630, 642 A.2d 483 (1994) (Wiretap Act confers jurisdiction on Superior Court to issue wiretap orders).

¶ 24 Here, the Appellant sought discovery of the audio component of the videotaped recording at AJ's Bar. The Commonwealth refused to provide the audio component until it was ordered by the court to do so. The trial court did not decide the motion because, it concluded, it did not have jurisdiction to authorize the disclosure because the exclusive jurisdiction for such authorization is with the Superior Court pursuant to the Wiretap Act.

¶ 25 Summarizing, the trial court erred in its legal conclusion about 18 Pa.C.S.A. § 5725(c). *Boettger v. Loverro*, 526 Pa. 510, 587 A.2d 712 (1991). Also, the Courts of Common Pleas have unlimited original jurisdiction over cases such as this murder case. Incident to that jurisdiction, Courts of Common Pleas have the authority over all discovery matters related to such cases, including those with Wiretap Act implications. Since the Commonwealth refused to turn over the audio portion of the videotape at Appellant's request, as required by Pa.R.Crim.P. 573(B)(1)(g), the trial court has the discretion under Pa.R.Crim.P. 573(E) to issue an appropriate order. Such an order constitutes a "court order" for purposes of 18 Pa.C.S.A. § 5725(c). Since the trial court has not decided the discovery motion before it, we reverse and remand the matter to the trial court.[10]

¶ 26 Order reversed. Case remanded. Jurisdiction relinquished.

officer's conversations were not oral communications within the meaning of the Wiretap Act because Agnew did not have a reasonable expectation that the contents of the discussion would not be intercepted. *Id.* at 523.

9. This Court considered the implications of the Wiretap Act in an appeal from the denial of a *habeas corpus* petition in *Commonwealth v. McIvor*, 448 Pa.Super. 98, 670 A.2d 697 (1996). McIvor, a police officer, filed a petition for writ of *habeas corpus* after being charged with three violations of the Wiretap Act for intercepting oral communications. McIvor claimed that the Commonwealth had failed to establish a *prima facie* case that he had violated the Wiretap Act when he secretly tape-recorded conversations with motorists during routine traffic stops. *Id.* at 698. We held that: 1) communications recorded by the police officer qualified as "oral communications" under the Wiretap Act; and 2) the Wiretap Act exception allowing a law enforcement officer to intercept oral communications where such officer is a party to the communication involving suspected criminal activity did not apply. *Id.* at 705, 707.

10. We note here that nothing herein is to be interpreted as a position regarding whether the Court of Common Pleas should order discovery or whether Appellant, the Commonwealth or a third person can seek suppression of this material in a criminal prosecution.